FILED

2020 Aug-27  AM 09:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| vs. | ) | |
| | ) | |
| INOAC INTERIOR SYSTEMS, LLC, | ) | |
| | | |
| Defendant. | | |

_____

## COMPLAINT

## I. JURISDICTION

1.   This is a suit for relief from unlawful discrimination and termination of employment instituted pursuant to the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.,* Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.,* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq*.   Jurisdiction of this Court exists pursuant to 28 U.S.C. §§1331 and 1343(4).

## II. PARTIES

2.   Plaintiff Mary Hampton ("Plaintiff") is an adult citizen of the United States and a resident of Jefferson County, Alabama.

3.  Defendant INOAC Interior Systems, LLC ("Defendant") is a corporation headquartered in Troy, Michigan.

### III. STATEMENT OF FACTS

4.  Paragraphs 1-3 above are incorporated by reference.

5.  Plaintiff is female.

6.  In or about September of 2018, Plaintiff became employed by Defendant at its facility in Bessemer, Alabama.

7.  Plaintiff's position was Quality Manager.

8.  In or about July of 2019, Plaintiff got to where she was feeling physically bad all the time: tired, lethargic, achy– like she had the flu.

9.  Plaintiff went to see doctors for visits and testing and took some time off work to go to them.

10.  Plaintiff's supervisor was plant manager Jeff McAdams.

11.  McAdams is male.

12.  Plaintiff told McAdams that she was having to take the time off from work to see doctors because she was not feeling well and needed to find out what was wrong with her.

13.  On or about August 18-19, 2019, Plaintiff was hospitalized overnight.

14.  Plaintiff was hospitalized due to blood clots determined to have resulted from Deep Vein Thrombosis (DVT).

15.  When Plaintiff was released from the hospital, she was taken off work by her physician until June 23.

16.  After her release, Plaintiff continued to see health care professionals for treatment and further testing to determine an underlying cause for the DVT and the other health issues Plaintiff was experiencing.

17.  Plaintiff was then diagnosed with vasculitis.

18.  Vasculitis is inflammation of the blood vessels.  It causes reduced blood flow, resulting in tissue and organ damage.

19.  After she returned to work, Plaintiff told McAdams about the vasculitis and the DVT and that she had been placed on blood thinners but might have more clots.

20.  Plaintiff also told McAdams that she would continue to undergo further testing to try to identify a root cause for her conditions and symptoms and that she would have to take off work further for that.

21.  On or about September 3, 2019, McAdams told Plaintiff to talk to the plant Human Resources Manager, Darrell Burns, about getting on FMLA leave to cover her and him (McAdams) for her absences.

22.  Plaintiff went to see Burns that same day.

23.  Plaintiff explained the situation to Burns, including that she would need to take off work for further testing.

24.  Burns said he had to order the FMLA papers and that they would be mailed to Plaintiff.

25.  A week or so later, Plaintiff had not received anything, so she asked Burns about it.

26.  Burns said that he would check.

27.   A day or so later, Plaintiff got the FMLA papers in the mail from FMLAMatters, a company Defendant used to handle FMLA leave.

28.  The papers included a medical certification form for Plaintiff's doctor to complete.

29.  According to the papers from FMLAMatters, Plaintiff was supposed to submit the medical certification form completed by her doctor by September 24, 2019.

30.  However, Plaintiff was not scheduled to see her doctor until October 1.

31.  Plaintiff asked Burns if this would be a problem, and he said no.

32.  The employees who worked under Plaintiff doing quality tests prepared a daily report of their tests.

33. The testing was done numerous times every day, and Plaintiff would not review any test results unless they were out of range.

34. On or about September 18, 2019, McAdams asked Plaintiff to pull the test reports for September 3.

35. McAdams said that an employee had reported some irregularity with testing on that day.

36. Plaintiff looked for the reports McAdams asked for but they were not there.

37. Plaintiff told McAdam this, and he said that he forgot that he already had them on his desk.

38. On or about September 19, 2019, Plaintiff was called into McAdams' office along with Angela Caudill, who worked under Plaintiff.

39. Burns was there.

40. Burns said that Plaintiff and Caudill were being suspended pending an investigation.

41. Burns said that it was about testing Caudill had done two weeks prior and whether she had falsified the results.

42. The testing in question was on September 3, the day for which McAdams had asked Plaintiff for the reports.

43. Caudill's job was not testing, but she had been filling in for someone doing testing who was out at the time.

44. Plaintiff was on vacation at the time of this testing and had no knowledge of it.

45. Plaintiff would not have, and should not have, followed up on this test even if she had been there because it was not out of range.

46. Further, McAdams was supervising Caudill in Plaintiff's absence at the time of the test.

47. So, in the meeting, Plaintiff asked why she was being suspended when she was on vacation at the time.

48. Burns said that they were just doing what they had been told by "corporate."

49. On or about September 26, 2019, Plaintiff was told to come to Burns' office.

50. Caudill had been called in and was there with Burns.

51. Burns said that Plaintiff and Caudill had to talk to Kim Rulo, Defendant's corporate Human Resources Director, on the phone.

52. Rulo interviewed Plaintiff over speaker phone with Burns present.

53.  Caudill was not present during Plaintiff's interview but was interviewed by Rulo separately.

54.  In Rulo's interview with Plaintiff, she asked Plaintiff about the testing on September 3.

55.  Plaintiff told Rulo that she knew nothing about it because she was on vacation at the time.

56.  Rulo said that she would talk to Kurt Krug, Defendant's Vice President over Human Resources, about the matter.

57.  On or about September 27, 2019, Burns called Plaintiff back to his office.

58.  Caudill had been terminated earlier that day.

59.  Caudill was told that she was being terminated because it had been determined that she had intentionally falsified the test results.

60.  When Plaintiff went into Burns' office later that day, McAdams was there with Burns.

61.  Burns said that "corporate" had made the decision to "separate" and that Plaintiff's termination would be backdated to September 19.

62.  Plaintiff asked why she was being fired.

63.  Burns said that Plaintiff was the manager of the department and was therefore responsible for Caudill's falsifying the test results.

64.  McAdams, who was supervising Caudill at the time she allegedly falsified the test results, was not terminated.

65.  Upon information and belief, no supervisor had ever been held responsible for alleged intentional wrongdoing by a subordinate done without their knowledge, as Plaintiff was.

66.  Plaintiff was replaced with a male.

67.  Shortly after being terminated, Plaintiff was diagnosed with sarcoidosis.

68.   Sarcoidosis is a disease involving the growth of tiny collections of inflammatory cells (granulomas) in parts of the body, most commonly the lungs and lymph nodes but also the eyes, skin, heart, and other organs.

69.  Plaintiff's sarcoidosis was determined to have been the root cause of her vasculitis and DVT.

## IV. CAUSES OF ACTION

### COUNT I

### ADA

70.  Paragraphs 1-69 are incorporated herein.

71.  Defendant was a covered employer under the ADA during the course of events set forth above.

72.    Plaintiff's DVT, vasculitis, and sarcoidosis constituted physical impairments under the ADA and did so during her employ with Defendant.

73.  Due to these impairments, Plaintiff was and is substantially limited with respect to the major life activity of her major bodily functions, including her cardiovascular and immune systems.

74.  Plaintiff was and is disabled under the ADA.

75.  Plaintiff was and is a qualified individual able to perform the essential functions of her position, with accommodation.

76.  Defendant violated Plaintiff's rights under the ADA by terminating her employment because of (a) her disability and/or (b) her request for an accommodation for her disability in the form of requested leave from work because of the disability.

77.   As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her in the position she would have occupied in the absence of discrimination (or front-pay), providing back-pay and lost benefits with interest, ordering Defendant to pay compensatory and punitive damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## TITLE VII

78.   Paragraphs 1-69 above are incorporated by reference.

79.   Defendant was a covered employer under Title VII during the course of events set forth above.

80.   Defendant violated Plaintiff's rights under Title VII by terminating her employment because of her gender.

81. Plaintiff's gender was a motivating factor in Defendant's decision to terminate her.

82.   As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's act as described herein violated Title VII;

(ii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating her and placing her in the position she would have occupied in the absence of Defendant's violation of Plaintiff's rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment with interest, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

<div align="center">

**COUNT III**

**FMLA**

</div>

83.  Paragraphs 1-69 above are incorporated by reference.

84.  Defendant was a covered employer under the FMLA during the course of events set forth above.

85.  Plaintiff was an eligible employee under the FMLA during the course of events set forth above, to-wit:

(a) Plaintiff had been employed by Defendant for at least 12 months;

(b) Plaintiff had worked at least 1,250 hours in her service to Defendant; and

(c) Plaintiff was employed at a worksite where 50 or more employees were employed by Defendant.

86.  During the course of events set forth above, Plaintiff's DVT, vasculitis, sarcoidosis, and other health conditions listed in the medical certification provided

by Plaintiff's physician constituted serious health conditions under the FMLA in that

it involved:

(a) an overnight stay in a hospital and subsequent periods of incapacity and

treatment (including examinations to determine if a serious health condition existed)

in connection with such inpatient care; and/or

(b) a chronic condition involving (i) treatment by a health care provider

(including examinations to determine if a serious health condition existed) at least

twice a year, (ii) continuation over an extended period of time (including recurring

episodes of a single underlying condition), and (iii) episodic rather than continuing

periods of incapacity.

87.   Plaintiff's absences referenced above through the date of her termination

were FMLA-qualifying absences.

88.   In reporting to the proper management employees of Defendant the cause

for her absences referenced above, Plaintiff met her obligation of apprising Defendant

that her absences were likely FMLA-qualifying by "specifically referenc[ing] either

the qualifying reason for leave or the need for FMLA leave," pursuant to 29 CFR

§825.303(b).

89.  In terminating Plaintiff, Defendant violated her rights under the FMLA by (a) interfering with her right to take leave covered by the FMLA, and/or (b) retaliating against her for availing herself of her rights under the FMLA.

90.  Defendant knew, or showed reckless disregard for whether, its termination of Plaintiff violated the FMLA.

91.  Defendant acted in willful violation of the FMLA.

92.   As a result of the above described unlawful acts, Plaintiff has been made to suffer lost wages and benefits of employment.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions violated the FMLA;

(ii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her in the position she would have occupied in the absence of Defendant's violation of her FMLA rights (or, alternatively, providing front-pay), providing back-pay and restoration of lost benefits and perquisites of employment with interest, ordering Defendant to pay liquidated damages, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant,

and its agents, employees, successors, and those acting in concert with Defendant

from further violating Plaintiff's FMLA rights;

(iv) That the Court award such other available legal and equitable relief as is

warranted, including, but not limited to, an award of costs and expenses, attorney's

fees, and expert witness fees.

<div style="margin-left: 40%">

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
Adam M. Porter, LLC
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Telephone: (205) 322-8999
Facsimile: (205) 402-4619
Email: adam@adamporterlaw.com

</div>

Plaintiff requests trial by struck jury.

<div style="margin-left: 40%">

s/ Adam M. Porter
Attorney for Plaintiff

</div>

Defendant's Address:
INOAC Interior Systems, LLC
c/o Kevin D. Pavlov, Registered Agent
5950 Greenwood Parkway
Bessemer, AL 35022